CHARLES H. GREENE *vs.* MAYOR OF FITCHBURG & others.

Worcester.    September 28, 1914. — October 24, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Municipal Corporations,* By-laws and ordinances. *Ice. License. Hawkers and Pedlers. Evidence,* Matters of common knowledge. *Equity Jurisdiction,* To enjoin enforcement of void ordinance.

Under St. 1906, c. 345, hawkers and pedlers may sell ice without a license; and the provision of that statute that their sales shall not be "made in violation of an ordinance or by-law of the city or town," does not authorize a city or town to require a license for such sales of ice within its limits. Consequently an ordinance of a city, which provides that "No person . . . shall sell at retail . . . or hawk or peddle any ice, within the limits of the city . . . , without having first obtained a license therefor, from the board of mayor and aldermen," is void as to hawkers and pedlers.

*It seems,* that this court will take judicial notice as a matter of common knowledge of the method of delivering ice to purchasers at retail which prevails in this Commonwealth.

It may be doubted, *whether* the provision of R. L. c. 57, § 44, that "whoever, being engaged in the business of selling ice at retail, refuses to sell, from any place or vehicle engaged in the regular distribution of ice at retail, a piece of ice at the fair value thereof to any person, other than an ice dealer, shall, if such person tenders in payment therefor the amount of five cents or any multiple thereof not more than fifty cents in legal money of the United States, be punished by a fine of not more than one hundred dollars," in view of the method of delivering ice to purchasers at retail which prevails in this Commonwealth, does not make every seller of ice at retail a hawker or pedler of it; but this question here was not decided.

Assuming that there are retail dealers in ice who are not hawkers or pedlers and who may be required by an ordinance of a city to obtain a license from the board of mayor and aldermen before selling any ice within the limits of the city, an ordinance, which requires that every applicant for such a license "shall answer under oath and in writing, if requested, such questions as said board or any committee thereof may deem necessary to secure the protection of the public health," is invalid and void, no authority being given to a city by any statute to confer on its mayor and aldermen, still less upon a committee of them, the power to determine what questions are "necessary to secure the protection of the public health."

A city has no authority to confer by an ordinance upon its mayor and aldermen the power to determine what is a "fair and reasonable price" for selling ice at retail.

A city has no authority to confer by an ordinance upon its mayor and aldermen discretionary power to increase the penalty fixed by statute for a violation of the provisions of R. L. c. 57, § 44, in regard to the sale of ice at retail.

Where the greater part of an ordinance attempted to be passed by a city is invalid,

and the rest of the ordinance is so connected with the void portion as to constitute with it an entirety from which it is not separable, the whole ordinance is void.

A suit in equity may be maintained to enjoin the officers of a city from enforcing an ordinance which is void because the city had no authority to pass it, if its enforcement would affect injuriously the property rights of the plaintiff.

BILL IN EQUITY, filed in the Superior Court on January 8, 1914, by an ice dealer, both wholesale and retail, against the mayor, the chief of police and the treasurer of the city of Fitchburg, to restrain the defendants from enforcing any of the provisions of a certain ordinance of that city relating to the sale of ice, which the plaintiff alleged to be illegal and void.

The third and fourth prayers of the plaintiff's bill, referred to at the end of the opinion, were as follows:

"3. That the court will declare the said ordinance null and void and will thereafter permanently enjoin the defendants from enforcing any of its provisions.

"4. That the plaintiff may be awarded his costs in this suit."

The ordinance in question was passed by the city council of the defendant and approved by its mayor on December 16, 1913. It was as follows:

"Section 1. No person, firm or corporation, or any agent thereof, shall sell at retail, or expose for sale, or hawk or peddle any ice, within the limits of the City of Fitchburg, without having first obtained a license therefor, from the Board of Mayor and Aldermen.

"Section 2. Every application for such license shall be made to the Board of Mayor and Aldermen in writing, and such applicant shall answer under oath and in writing if requested, such questions as said Board or any committee thereof may deem necessary to secure the protection of the public health.

"Section 3. No license to any applicant therefor shall be granted by the Board of Mayor and Aldermen until said Board determines that the applicant is properly qualified to engage in said business, that the health of the community will be protected, and that ice will be sold at fair and reasonable prices.

"Section 4. Any person, firm or corporation, or any agent thereof, receiving such license and engaged in the business of selling ice at retail, who refuses to sell from any place or vehicle engaged in the regular distribution of ice at retail a piece of ice

at a fair value thereof to any person other than an ice dealer, shall if such person tenders in payment therefor the amount of five cents or any multiple thereof of not more than fifty cents, in addition to any penalty now fixed by law, may in the discretion of the Mayor and Board of Aldermen, forfeit said license, and the same may be revoked and made void.

"Section 5. Every application made for a license as aforesaid, together with the answers of the applicant under oath and in writing, if such license is granted, shall be filed in the office of the City Clerk, and upon request shall be opened for public inspection.

"Section 6. Licenses shall be granted in January of each year for the term of one year, and may be granted at any time during the year for the unexpired period thereof, and a license fee for the sum of one dollar for each license shall be paid.

"Section 7. Any person, firm or corporation, or any agent thereof, who sells at retail, exposes for sale, hawks or peddles ice within the limits of the City of Fitchburg without having first obtained such license, shall be liable to a fine not exceeding twenty dollars for each offence.

"Section 8. This Ordinance shall take effect upon the first day of January, 1914."

The case was referred to George S. Taft, Esquire, as master. He made a report, to which the plaintiff filed certain exceptions, on which there was a hearing before *Hall*, J., who made an interlocutory decree overruling the exceptions and confirming the master's report. Later upon a motion for a final decree the case came on to be heard before the same judge, who at the request of the parties reserved and reported it upon the pleadings and the master's report for determination by this court.

*G. K. Hudson,* for the plaintiff.

*J. H. McMahon,* for the defendants.

SHELDON, J. The main question raised in this case is as to the validity of the ordinance of the city of Fitchburg. That depends upon the questions whether it is authorized by statute and whether it is reasonable. *Commonwealth* v. *Crowninshield,* 187 Mass. 221, 224.

By the charter of the city of Fitchburg, St. 1872, c. 81, § 24, the city council was given the power to "make by-laws, with

suitable penalties, for the inspection, survey, measurement and sale" of certain specified articles which do not include ice (*Commonwealth* v. *Reid*, 175 Mass. 325), and also to "make all such salutary and needful by-laws as towns, by the laws of this Commonwealth, have power to make and establish, and to annex penalties, not exceeding twenty dollars, for the breach thereof." It is provided also by R. L. c. 26, § 18, that "a city may establish ordinances to secure the inspection of ice sold within its limits and to prevent the sale of impure ice, and may affix penalties of not more than twenty dollars for each violation thereof." If these statutes stood alone, there would be force in the defendants' contention that this city had the power not only to regulate by suitable by-laws the sale of ice within its limits, but as a means therefor to forbid any person to sell at retail or to hawk or peddle ice within those limits without first having obtained a license therefor from the city authorities. *Commonwealth* v. *Stodder*, 2 Cush. 562. *Commonwealth* v. *Plaisted*, 148 Mass. 375.

But it was enacted by R. L. c. 65, § 15, that "Hawkers and pedlers may sell without a license books, newspapers, pamphlets, fuel, fruits, provisions, ice, live animals, brooms, agricultural implements, hand tools used in making boots and shoes, agricultural products of the United States, and the products of their own labor or of the labor of their families, if such sale is not in violation of any ordinance or by-laws of a city or town. Cities and towns may, by ordinance or by-law not inconsistent with the provisions of this chapter, regulate the sale and exposing for sale by hawkers and pedlers of said articles, and may affix penalties for the violation thereof." After the decision of *Commonwealth* v. *Caldwell*, 190 Mass. 355, this section was modified to read as follows: "Hawkers and pedlers may sell without a license books, newspapers, pamphlets, fuel, provisions, ice, live animals, brooms, agricultural implements, hand tools used in making boots and shoes, and the products of their own labor or of the labor of their families, including among such products fruits and agricultural products, if such sale is not made in violation of an ordinance or by-law of the city or town. Cities and towns, may by ordinance or by-law not inconsistent with the provisions of this chapter regulate the sale and exposing for sale by hawkers and pedlers of said articles, and may affix penalties for the violation of such regu-

lations; and may require hawkers and pedlers of fruit and vegetables to be licensed, provided that the license fee does not exceed that prescribed by section nineteen of chapter sixty-five of the Revised Laws for a license embracing the same territorial limits. But a person engaged in the pursuit of agriculture who peddles fruits and vegetables shall not be deemed a hawker or pedler under the provisions of this chapter." St. 1906, c. 345. Whatever doubt might have been entertained before the enactment of the last cited statute, it is now plain that hawkers and pedlers may sell ice without a license; for this is the express enactment. The requirement that their sales shall not be "made in violation of an ordinance or by-law of the city or town" is given ample scope when construed to require compliance with whatever ordinances or by-laws may have been passed for the protection of the public health or under the authority of R. L. c. 26, § 18, already cited. The next provision of the statute, that cities and towns may require hawkers and pedlers of fruits and vegetables to be licensed, indicates plainly the legislative intention that under the guise of regulating the sale of the other articles mentioned, including ice, no ordinance or by-law should require the obtaining of a license therefor. It follows therefore that the first section of this ordinance, so far as it forbids the hawking or peddling of ice without having a license therefor, is contrary to the requirements of the statute and so is invalid.

By R. L. c. 57, § 44, it is enacted that "Whoever, being engaged in the business of selling ice at retail, refuses to sell, from any place or vehicle engaged in the regular distribution of ice at retail, a piece of ice at the fair value thereof to any person, other than an ice dealer, shall, if such person tenders in payment therefor the amount of five cents or any multiple thereof not more than fifty cents in legal money of the United States, be punished by a fine of not more than one hundred dollars." Under the method of delivering ice in this Commonwealth to purchasers at retail, of which method as a matter of common knowledge the court takes judicial notice, it might be contended that this statute goes far to make every seller of ice at retail a hawker or pedler thereof, and so that the first section of this ordinance is invalid as to all sellers of ice at retail. But we do not decide this question.

The second section of the ordinance, if we assume that retail

dealers in ice can be required to obtain a license, is without legislative authority. It has not been contended in argument that there is any legislation authorizing a requirement that any one who applies for a license shall "answer under oath and in writing, if requested, such questions as said board [the mayor and aldermen] or any committee thereof may deem necessary to secure the protection of the public health." It is not for the mayor and aldermen, much less for any committee of them, to determine by their own opinion what questions are "necessary to secure the protection of the public health." Such a committee might be wholly unqualified to determine what questions ought to be put to an applicant for a license. Though acting in good faith, as it must be presumed that they would act, they might deem that his own health and habits and those of his family and indeed of all his associates ought to be inquired into and passed upon. They might think the extent of his pecuniary resources important upon the question of whether he might yield to the possible temptation of increasing his profits or perhaps of avoiding a loss by selling impure ice. They might conduct an inquisition into all his most private affairs, and then lay open to public inspection the information thus extorted, to gratify the animosities of his ill-wishers. Plainly this could not be required. Applicants have a right to know the nature of the tests by which their qualifications are to be determined. The tests are not to be left to the arbitrary views of a subordinate body. See the discussions in *Lowell* v. *Archambault*, 189 Mass. 70, and *Commonwealth* v. *Maletsky*, 203 Mass. 241, 246. For the same reasons the requirement of section five, that the answers of the applicant to such questions "shall be filed in the office of the city clerk, and upon request shall be opened for public inspection," is invalid.

The third section likewise is beyond the power of the city council to pass. They have not the authority to fix the prices at which ice shall be sold at retail. That article stands upon the same footing as all the other articles mentioned in St. 1906, c. 345. A city or town, in the absence of a grant of the authority from the Legislature, can no more fix the price of one of these articles than of the others. Reasonable prices for ice must vary from time to time, certainly from season to season, and very likely from one part of a season to another. Even if it be assumed that the Leg-

islature might determine the highest or the lowest price at which this article could be sold, or might remit to the courts the question of whether a price was reasonable, *Janvrin, petitioner*, 174 Mass. 514, yet it has not been contended that such a power has been given to cities and towns, and we are not aware that it has been.

The fourth section of the ordinance affixes a possible additional penalty for a violation of the provisions of R. L. c. 57, § 44. But the Legislature has dealt fully with the subject, and the statute is neither to be enlarged nor restricted by a city ordinance. Nor, for the reasons already stated, is it for the mayor and aldermen to determine what are reasonable prices.

The seventh section must stand or fall with the other provisions of the ordinance.

It thus appears that by far the greater part of this ordinance is invalid. In our opinion, its provisions constitute an entirety, in which the void parts cannot be separated from the small residue of the ordinance, so as to enable us to say that any part of it can be sustained. The facts that a license cannot be required from many of those from whom the ordinance attempts to require one, that the provisions for the obtaining of a license by any one are void and of no effect, that the attempt to regulate the prices to be charged for ice is a failure, and that the provision as to the sale of ice in small quantities is beyond the authority of the city council, lead to the conclusion that the whole ordinance is void. *Austin* v. *Murray*, 16 Pick. 121, 126. *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84. *Commonwealth* v. *Hana*, 195 Mass. 262. *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 380. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 113.

The defendants have not contended that upon the conclusion which we have reached the plaintiff is not entitled to the relief sought by his bill. We do not doubt that equity may enjoin public officers from taking action which will be injurious to the plaintiff's property rights under an ordinance which is merely void as well as under a statute which is unconstitutional. *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503, 506. Such relief was given under like circumstances in *Dobbins* v. *Los Angeles*, 195 U. S. 223; *M. Schandler Bottling Co.* v. *Welch*, 42 Fed. Rep. 561; *Central Trust Co. of New York* v. *Citizens' Street Railway*, 80 Fed. Rep.

218; *Southern Express Co.* v. *Mayor of Ensley,* 116 Fed. Rep. 756; *Rushville* v. *Rushville Natural Gas Co.* 132 Ind. 575; *Mayor of Baltimore* v. *Radecke,* 49 Md. 217. And see the cases cited in 22 Cyc. 891, 892.

A decree is to be entered in favor of the plaintiff under the third and fourth prayers of his bill.

*So ordered.*