G & M EMPLOYMENT SERVICE, INC. & others *vs.*
COMMONWEALTH
(and a companion case [1]).

Suffolk. October 9, 1970. — December 17, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Employment Agency. Constitutional Law,* Employment agency, Due process of law, Equal protection of laws, Price control. *Equity Jurisdiction,* Declaratory relief. *Words,* "Just cause," "Extenuating circumstances."

A demurrer to the bill in a suit in equity under G. L. c. 231A by certain employment agencies against the Department of Labor and Industries and its commissioner, seeking declaratory relief and contesting the constitutionality of St. 1967, c. 896, amending the regulation of employment agencies found in G. L. c. 140, §§ 46A–46R, was properly overruled, although the department's enforcing officials had not asserted a specific intent to apply the new statute to the plaintiffs. [434]

G. L. c. 140, §§ 46A–46R, as amended by St. 1967, c. 896, is not unconstitutional on grounds contended by certain employment agencies

---

[1] G & M Employment Service, Inc. & others *vs.* Department of Labor and Industries & another. The other plaintiffs in each case are (a) three corporate employment agencies, viz. Snelling and Snelling of Boston, Inc., Abbott's of Boston, Inc., and B. E. J. Corporation (of Springfield), and (b) one Boston individual sole proprietorship employment agency, Walter F. Matson, doing business as White's Employment Service.

placing work applicants with employers: under § 46O (a), a determination whether an applicant is discharged by an employer "for just cause" does not provide a standard too vague to be enforced [434–435]; an agency can avoid complicity in a violation of § 46O (f), prohibiting employers from deducting agency fees from wages, by appropriate actions [435–436]; under § 46L and § 46N, read together, an agency need not be certain that an applicant understands the contract between them which the agency is required to explain, and may protect itself against complaint [436]; and under § 46N, a determination whether an applicant's failure to report for duty with an employer or voluntary resignation is "occasioned by extenuating circumstances" does not involve a standard too vague to apply [436].

The exemptions in G. L. c. 140, § 46A, as amended by St. 1968, c. 412, § 1, from the regulation of employment agencies, of firms employing individuals directly for the purpose of furnishing part time or temporary help to clients, and of firms which are not engaged in providing domestic employees and none of whose fees are paid by an applicant for employment, are based upon a permissible classification and do not deny equal protection of the laws to regulated agencies. [436–437]

It is within the power of the General Court to set out in a statute reasonable, nonconfiscatory maximum fees which may be charged applicants for employment by employment agencies. [437]

G. L. c. 140, § 46L, as amended by St. 1967, c. 896, § 4, setting out maximum fees which regulated employment agencies may charge applicants for employment, was not shown by the evidence in a suit in equity by five of the many employment agencies in Massachusetts against the Department of Labor and Industries and its commissioner to be confiscatory as applied to the plaintiffs or to all regulated employment agencies here. [443]

BILL IN EQUITY against the Commonwealth filed in the Superior Court on March 25, 1967.

A demurrer was heard by *Kalus, J.*

BILL IN EQUITY against the Department of Labor and Industries and its commissioner filed in the Superior Court on August 1, 1968.

A demurrer was heard by *Hale, J.,* and the case was heard on the merits by *Goldberg, J.*

*Herbert Burstein* (*Reuben Landau* with him) for the plaintiffs.

*Walter H. Mayo, III,* Assistant Attorney General, for the defendants.

CUTTER, J. Five plaintiffs (the services), each of which conducts an employment agency, by two bills in equity, seek declaratory relief and contest the constitutionality of

St. 1967, c. 896 (the 1967 act), which amended the regulation of employment agencies found in G. L. c. 140, §§ 46A to 46R. One bill is brought against the Commonwealth. In the other bill the defendants are the Department of Labor and Industries (the department) and its commissioner (the commissioner).

The Commonwealth's demurrer to the bill against it was sustained. From that interlocutory decree and from a final decree dismissing that bill, the services appeal. Both defendants appeal from an interlocutory decree overruling the demurrer to the bill against the department and the commissioner.

On the bill against the department and the commissioner, a Superior Court judge, after hearing, adopted his voluntary findings as a report of material facts. The final decree declared, among other matters, (1) that, in various general respects (mentioned below), the 1967 act is constitutional, but (2) that the maximum rates prescribed by § 46L, as amended by the 1967 act, "are unreasonable in that they deprive the . . . [services] and others in a similar position of . . . a fair rate on their property, and . . . are . . . confiscatory." From the final decree, all the parties appealed. The evidence is reported.

## THE STATUTES.

Private employment agencies were subjected to some regulation by St. 1964, c. 670, § 1, which inserted §§ 46A to 46R in G. L. c. 140. These provisions were revised by St. 1966, c. 729, but no maximum agency fees were then prescribed. By the 1967 act the regulatory provisions were again changed, particularly by including a schedule of maximum fees.[2] References below are to the present form

---

[2] The 1964 and 1966 legislation referred to in the text and the 1967 act are based to some extent on a report of the Legislative Research Council on Private Employment Agencies dated November 13, 1963; 1964 Senate Doc. No. 655. See concerning the 1966 statute, Segal, Developments in Labor Law, 10 Boston Bar J. (Dec. 1966) 7, 12; 1967 Ann. Surv. Mass. Law, § 12.14. For the background of the 1967 act see 1967 House Bills, Nos. 604, 2426, 2427, and 5201; 1967 Senate Bills, Nos. 498, 535; and 1967 Senate Journal, pp. 2503–2504.

of the statute, the 1966 act as amended by the 1967 act and by the 1968 amendment mentioned in the next paragraph.

The commissioner is charged with administering these statutes. Section 46A (as amended by the 1967 act, and as again amended by St. 1968, c. 412, § 1, which became effective after the commencement of these suits) exempts from the definition of "employment agency" (1) firms (not engaged in furnishing domestic employees) whose fees are not paid directly or indirectly by any applicant for employment and (2) persons hiring individuals directly for the purpose of furnishing part-time or temporary help to others.[3]

Section 46L (as amended by the 1967 act) prescribes maximum fees to be charged applicants for employment of various classifications and regulates the charging and collection of such fees in various respects. In general the maximum fees are expressed in percentages of salary or wages actually received by the employee for a relatively short period of service. It is explicitly stated that the portions of § 46L imposing maximum fees "shall not apply to applicants . . . hired at an annual wage of over" $8,000, nor "shall they apply to any agency which is paid solely by employer clients."

1. The Commonwealth contends that the suit against it cannot be maintained because it has not consented to be sued in a controversy of this type. See *Executive Air Serv. Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, in which direct equitable relief was sought against the Commonwealth in an effort to try certain aspects of the title to land claimed by the Commonwealth. No constitutional claim appears there to have been asserted. Cf. *Kenyon* v. *Chicopee,* 320 Mass. 528, 532–536; *P. B. I. C. Inc.* v. *District Atty. of Suffolk County,* 357 Mass. 770.

The Commonwealth is not an indispensable party to the suit against the commissioner and the department, the en-

---

[3] Nonprofit and public agencies in effect also are not included within the definition (in § 46A) of "employment agency," because that definition must be read with the definition of "person" in § 46A, which excludes such nonprofit and public groups.

forcers of the statute. See G. L. c. 140, § 46R (which provides that the commissioner may institute proceedings based upon any violation). The Attorney General has appeared for them. See G. L. c. 231A, § 8; *Pioneer Credit Corp.* v. *Commissioner of Banks*, 349 Mass. 214, 221, fn. 3.

Similar bills for declaratory relief have been maintained with respect to other penal statutes. *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 696. *Sturgis* v. *Attorney Gen. ante*, 37, 38–39. See *Commissioner of Admn.* v. *Kelley*, 350 Mass. 501, 506; *Revere Housing Authy.* v. *Commonwealth*, 351 Mass. 180, 182. See also *Sun Oil Co.* v. *Director of Div. on the Necessaries of Life*, 340 Mass. 235, 239; *Demetropolos* v. *Commonwealth*, 342 Mass. 658, 661 (where no question was raised by the Commonwealth about its joinder as a party and the issues, in any event, were adequately presented by other defendants); *Commonwealth* v. *Baird*, 355 Mass. 746, 755. In the light of these authorities, declaratory relief may be afforded against the enforcing officials, even if no specific intention to apply the allegedly unconstitutional statute to these plaintiffs has been asserted. Cf. *Kelley* v. *Board of Registration in Optometry*, 351 Mass. 187, 192 (suit not brought against official having power to regulate the plaintiffs' activities).

In the suit against the commissioner and the department, every issue presented in either suit can be decided. Accordingly, although urged to do so, we need not now decide whether the *Executive Air Serv. Inc.* case (342 Mass. 356) should be modified or limited to its precise facts. We thus do not modify the interlocutory decree sustaining the demurrer or the final decree in the case against the Commonwealth. In the other case, the demurrer was properly overruled.

2. The trial judge correctly rejected the services' contention that the statute is unconstitutional because too vague in various respects.

(a) Under c. 140, § 46O (a), it is provided that if the discharge of an applicant, within one month of entering upon

his employment, "is *not for just cause*, the employment agency shall on demand refund . . . that portion of the fee paid in excess of ten per cent of the gross wages paid to the applicant" (emphasis supplied). The services suggest that the words "not for just cause" are too vague to be enforced. Vague or overbroad statutes imposing criminal penalties cannot be applied validly in circumstances where there is substantial uncertainty concerning their meaning. See *Opinion of the Justices, post*, 827, 829, and cases cited. The standard of "just cause," however, in the context of a statute regulating employment agencies, would require determination (among other matters) whether there existed (1) a reasonable basis for employer dissatisfaction with a new employee, entertained in good faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business. Discharge for a "just cause" is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith. Similar general statutory language has been sufficiently definite to administer fairly. See *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362; *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 613, 616–620; *School Comm. of Salem* v. *Civil Serv. Commn.* 348 Mass. 696, 698–699.

(b) Section 46O requires refunds "by employment agencies" of fees paid to them in certain circumstances. Subsection (f) provides that any "employer who . . . obtains applicants from an employment agency shall not . . . deduct any part of the fees paid to . . . [the] agency from the wages . . . of . . . employees placed by such . . . agency." The services argue that the employment agencies cannot be subjected to penal provisions for failure to make refunds because of employer conduct of which the agencies may know nothing and for which they are not responsible. Subsection (f) does not in terms require any refund by an employment agency in the event of a violation

of the subsection by an employer.  Subsections (e) and (f), added to § 46O by the 1967 act more appropriately should have been placed in a separate section, as they do not in terms require refunds and have no apparent relation to the introductory sentence of § 46O.  An employment agency wishing to avoid any complicity in such a violation by an employer, before providing an employer with applicants, may require the employer to undertake by contract to comply with subsec. (f).

(c) It is argued that portions of § 46L, e.g. subsecs. (C) (1) (b), (2), and (4) (c), may require that an employment agency enter into a written contract with each applicant and that the applicant also understand the contract. Section 46N requires explanation of the agency contract to the applicant and the execution of a statement by the applicant that he has "thoroughly read . . . [his] contract with . . . [the agency] and accept[s] its terms."  The two sections are to be read together.  We do not interpret the portions of § 46L just mentioned as requiring that an agency be certain that an applicant understands his contract.  In any event, an agency may protect itself against allegations of failure to explain to applicants the terms of its contract with them by preserving proof of compliance with § 46N, with appropriate added written acknowledgments by the applicant of agency explanation of the contract to him.

(d) Under § 46N, in certain circumstances, collection of an agency's fees will be permitted, "provided the applicant's failure to report for duty or his voluntary resignation is not occasioned by *extenuating circumstances*" (emphasis supplied).  What "constitutes 'extenuating circumstances' shall be decided by the commissioner," who by another section (§ 46Q) is given power to prescribe regulations to carry out §§ 46B to 46R, inclusive.  Although the quoted provision of § 46N is not precise, the term "extenuating circumstances" provides a standard which an administrative official should be able to apply, particularly if guided by appropriate regulations.

3. The services are not denied equal protection of the

laws because of the exemption (in § 46A) of (a) firms which employ persons to serve clients as part-time or temporary employees, and (b) agencies (not engaged in supplying domestic employees) whose fees are not paid by the applicant. The Legislature may reasonably have determined (1) that there is no need of regulating those exempted agencies who themselves employ persons to serve others as temporary or part-time assistants, and (2) that agencies whose fees are paid by employers will not be permitted by such employers to engage in abuses of the type the 1967 act was designed to prevent, or that, in any event, the employees will not themselves be paying fees which may be excessive. The exemptions seem to us to be based upon a permissible classification. *Commonwealth* v. *Leis,* 355 Mass. 189, 192, 196–198. *Commonwealth* v. *Haseotes,* 356 Mass. 230, 233, and cases cited. *Opinion of the Justices, post,* 827, 830.

4. The services contend that "price fixing" (a loose reference to the maximum fees set out in § 46L of the 1967 act) is beyond the power of the General Court. A comprehensive report of the Legislative Research Council in 1964 Senate Doc. No. 655 (see fn. 2, *supra*), states reasons for public concern about private employment agency fees. *Olsen* v. *Nebraska,* 313 U. S. 236, 244–246 (overruling *Ribnik* v. *McBride,* 277 U. S. 350, 360), settles the question of State power reasonably to regulate excessive employment agency fees. See *Gold* v. *DiCarlo,* 235 F. Supp. 817, 819 (S.D. N.Y.), affd. 380 U. S. 520; *Gail Turner Nurses Agency, Inc.* v. *State,* 17 Misc. 2d (N.Y.) 273, 275–277; *Murphy* v. *Eldridge,* 201 Okla. 501, 502–504; *Petstel, Inc.* v. *County of King,* 77 Wash. 2d 144, 155–156. Cf. *Greene* v. *Mayor of Fitchburg,* 219 Mass. 121, 126–127; and *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline,* 357 Mass. 709, 719–720, where no legislation had authorized the local price or rent regulation there considered. Cf. also *Boomer* v. *Olsen,* 143 Neb. 579, 583, where maximum fees were held to be confiscatory, apparently without much specific consideration of pertinent evidence. For discussion of judicial consideration of the issue of confiscation, see *Lowell Gas Co.* v. *Depart-*

*ment of Pub. Util.* 324 Mass. 80, 86–89; *Opinion of the Justices,* 328 Mass. 679, 681–690.

5. Finally we consider whether the trial judge was justified in concluding that the 1967 maximum rates (§ 46L) are confiscatory. The Legislature has not decided that, in the public interest, certain employment agencies, conducted for profit, must be completely forbidden. Indeed, it has provided that they shall be licensed (§§ 46B–46F) and otherwise regulated. The services performed by such agencies, if conducted reasonably and in conformity with the statute, have not been made unlawful. See *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins. ante,* 272, 280–281.

The Legislature may itself prescribe reasonable, nonconfiscatory maximum fees or charges to be used by persons engaged in a lawful calling which is properly subjected to regulation. It need not, although it may, prescribe a statutory standard of fair and just rates. Cf. *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 269–273. It is not required to designate a rate-fixing board or official (such as the Department of Public Utilities for public service companies, or the Commissioner of Insurance for insurance). Nevertheless, such legislatively fixed fees and charges may not be set so low as to be confiscatory, and to make it impossible for a prudent, efficient person, association, or corporation, engaging reasonably in the regulated and lawful calling, to receive fair payment for its services and a fair return upon its investment. See *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins. ante,* 272, 277–278. We summarize evidence relied upon by the services to show the maximum rates to be confiscatory.

6. There are about 250 to 300 private employment agencies, run for profit, in Massachusetts. They vary in methods of operation and areas of specialization. There are also public agencies and professional and college placement bureaus performing similar functions. Public and private agencies together make fifteen to twenty per cent of the permanent placements each year in Massachusetts. A survey of the employment agency situation was conducted in

1965 or 1966 by the Massachusetts Employment Association, which has about fifty members.[4] Those members who answered a questionnaire in 1966 furnished information indicating that their then cost of business was 85% to 95% of their gross revenues. For example, the cost of placing a secretary receiving $100 a week would be between $250 and $270. The fee charged for such a placement by one agency, Snelling and Snelling of Boston, Inc. (S & S), under its 1966 rates, would have been $299, and under the 1967 statutory schedule, it would have been $260.

A witness discussed S & S as an example of an agency's operation. In 1967, S & S placed 2,500 applicants. It uses newspaper and other advertising to obtain business. Applicants are interviewed by job counselors, who review and test each applicant's abilities and background and prepare him for job interviews. S & S employs one supervisor or manager for each eight or nine of its twenty-two or twenty-three job counselors. Even if no statutory maximum ceiling controls the fees which S & S may charge to an employer, the management of S & S thinks it will not be able to demand from an employer more than the statutory maximum fee chargeable to an applicant, because the employer will insist on payment of the statutory fee by the applicant and then reimburse him. The Massachusetts Employment Association "as an entity" concluded "[t]hat the private employment agency industry could not continue" under the maximum rates set in the 1967 act. The management of S & S is of opinion that S & S cannot do so. In the opinion of a witness from S & S, the "overall methods and procedures" of other agencies, "the overall picture of costs [and cost ratios], and the overall ratio of applicants to placements" run pretty much the same "across the country."

S & S turned all its 1967 invoices over to its accountant and had him compute from them a "projection" of what the fees for its actual 1967 placements would have been under

---

[4] There was testimony that the results of the survey had been destroyed to preserve the confidential nature of the replies from members. The discussion of the survey was general and inconclusive.

the maximum fee schedules set out in the 1967 act and what adjustments of S & S's actual 1967 costs (e.g. lower commissions to counselors) would have occurred. On this basis, exhibits compared the actual 1967 results (under the then existing S & S fee schedule) with the "projected" results under the fee schedule in the 1967 act. The S & S figures on these two bases are shown in the margin.[5] These figures reveal (a) a materially lower gross income on the "projected" basis than on the "actual" basis, and (b) a substantial operating loss on the "projected" basis compared with a considerable actual 1967 operating profit. Certain items of expense (fn. 5, items E-1, E-2, E-3) were not shown to be unavoidable or necessarily reasonable, although perhaps consistent with S & S's manner of actual operations in 1967 and prior years.[6]

| [5] Item | | Actual 1967 | Projected 1967 |
|---|---|---|---|
| (1) | Fees | $789,613 | $550,911 |
| (2) | Expenses | 693,986* | 590,708* |
| (3) | Operating income | 95,627 | LOSS ($ 39,797) |
| (4) | Nonemployment income | 3,190 | |
| (5) | Income before Federal income tax | 98,817 | |
| (6) | Provision for Federal income tax | 34,733 | |
| (7) | Net income | $ 64,084 | |

* The 1967 "actual" expenses included $372,228 of payroll expense, $31,664 of "franchise commissions and national advertising" and $174,701 of "other operating expenses." "Actual" 1967 payroll broke down into "officers" $85,000; "other" $287,228. The 1967 "projected" expenses showed among other items

| Item | | | |
|---|---|---|---|
| E-1 | Franchise commissions and national advertising | | $ 22,036 |
| E-2 | Management fees | | $ 55,091 |
| E-3 | Payroll — | | |
| | (a)   counselors | $147,728 | |
| | (b)   others | 164,693 | |
| | (c)   total payroll | | $312,421 |

The accountant for S & S did not make any independent check with other companies of the reasonableness of the costs shown as S & S's expenses.

[6] A separate company, Snelling & Snelling of Massachusetts, Inc. (S–Mass.) performed managerial and accounting services for S & S. S & S and S–Mass. paid no dividends. S–Mass. obtained a franchise from Snelling & Snelling, Inc. of Philadelphia (S–Phila.). Each franchise holder pays S–Phila. a four per cent franchise charge on its net fees from placements. Burton Bartzoff, vice-president of S & S, testified that he and his brother each received a salary of $35,000 a year from S & S, and, until some time in 1968, they each received $8,000 to $10,000 from S–Mass. in 1968, and between $15,000 and $20,000 in 1967. No one except Bartzoff, his brother, and his father (who received about $10,000 to $12,000 a year from S–Mass. and $9,000 from S & S) owns any stock in either S–Mass. or S & S.

G & M Employment Service, Inc. *v.* Commonwealth.

Representatives of several other services testified. A summary of their operations on a 1967 (or 1965 in one instance) "actual" and "projected" bases is shown in the margin.[7] The judge reasonably excluded testimony that the S & S operation was fairly representative of the operations of seventy "general" agencies, because the witness, prepared so to testify, did not show that he was qualified to do so.

We assume, without deciding (a) that a considerable number of agencies, operating in the same manner in which they conducted their business in 1967, and having the same volume and character of business, would show (under the fee rates in the 1967 act) a material reduction in gross revenues from placements and substantial net losses from operations, (b) that these agencies would receive reduced income from placing low paid applicants,[8] and (c) that many agencies would be forced to change their practices. It may be that the evidence (offered with respect only to a few of the 250 to 300 agencies in Massachusetts) does not prove even the facts thus assumed. Even upon these assumptions, however, confiscation has not been established.

We are not dealing with a telephone, electric, gas, or water utility, or a carrier, or an insurance company, subjected to intensive public regulation. Such companies are required

---

[7] These figures, as found by the trial judge or shown in the exhibits, are:

| | 1967 "Actual" | | 1967 "Projected" | |
|---|---|---|---|---|
| | Gross income | Profit (or loss) before taxes | Gross income | Loss before taxes |
| G & M Employment Service, Inc. | $101,114.89 | $ 4,541.45 | $ 80,804.09 | ($16,000. ) |
| Abbott's of Boston (F.Y. 6-30-68) | 166,764. | LOSS (28,677. ) | 137,901. | LOSS (53,187. ) |
| B.E.J. Corporation | 38,8.2170 | LOSS ( 1,816.50) | 27,426.51 | LOSS ( 8,290.81) |
| Walter F. Matson d.b.a. White's Employment Service | 23,122.59 | (1965 figures) 5,000. (approx.) | 6,898.49 | Substantial loss |

[8] This would be in part because the fee rates in the 1967 rates for placing such applicants (see § 46L) are much lower than earlier rates and in part because § 46O (e) would require reduction of the maximum fee "to the extent that payment would result in the applicant's average hourly wages . . . falling below . . . applicable federal or state minimum wage" rates or the minimum set out in "any applicable collective bargaining agreement."

by the regulatory authorities to keep comprehensive accounts and records, and to report their operating results and other statistics on a substantially uniform basis. See e.g. G. L. c. 159, §§ 31, 32; c. 164, §§ 81–85A; c. 165, § 2; c. 174A, § 15; c. 175, § 4; c. 175A, § 15.[9] As to such companies, the essentially complete financial and other data available greatly assist a determination whether rates result in confiscation, or in a failure to adhere to a prescribed statutory standard.[10]

In the present cases, we have meager statistical, financial, and operating information about any employment agencies, and that little about only a small portion of the many employment agencies doing business in the Commonwealth. No uniform accounting system or central repository of fiscal information for such agencies is shown to exist. It has not adequately been proved (a) that the operating results of the plaintiffs are fairly representative of any substantial part of the employment agencies in the State; or (b) that the plaintiffs' methods of operation, and expenditures for salaries and other items are reasonable and proper,[11] or (c) that such agencies would not obtain better results from greater effort to place applicants in jobs where maximum fees are not regulated (e.g. placements of applicants in posts where the pay is over $8,000 a year, or where the employer is willing to pay the placement fee) and from curtailing those operations subject to maximum fee restrictions. See the somewhat

[9] Such companies of the same general type also carry on their operations in a substantially uniform manner. The comparison of one company's results and methods with those of other companies, affords a basis for appraising efficiency and reasonableness of expenditures.

[10] See e.g. *New England Tel. & Tel. Co.* v. *Department of Pub. Util.* 327 Mass. 81; *Boston Consol. Gas Co.* v. *Department of Pub. Util.* 327 Mass. 103; *Wannacomet Water Co.* v. *Department of Pub. Util.* 346 Mass. 453, 459–464. See also *American Employers' Ins. Co.* v. *Commissioner of Ins.* 298 Mass. 161, 163–164; *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 274–277; *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 753–754; *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins. ante,* 272, 274–276.

[11] More evidence was offered concerning the operations of S & S than about any other employment agency. We are not convinced that S & S established that its expenditures for officers' salaries and intercompany services were reasonable. See fns. 5, 6, *supra.*

358 Mass. 443                                                    443

analogous situation discussed in *Mile Road Corp.* v. *Boston,* 345 Mass. 379, 383.

The plaintiffs have not presented adequate evidence to justify the conclusion that application of the 1967 act to them, or to all employment agencies in the Commonwealth, will result in confiscation. Certainly, the facts relied upon by the trial judge, as shown by his findings, are not sufficient to establish confiscation.

7. In the case against the Commonwealth the interlocutory decree sustaining the demurrer and the final decree are affirmed. In the case against the department and the commissioner, the interlocutory decree overruling the demurrer is affirmed and the final decree is reversed. A new final decree is to be entered declaring that the maximum fee schedule set out in G. L. c. 140, § 46L, as amended by St. 1967, c. 896, § 4, has not been shown to result in confiscation and that no other part of the statute has been shown to be unconstitutional as applied to the plaintiffs.

*So ordered.*

