# United States Court of Appeals
## For the First Circuit

No. 04-1516
No. 04-1563

JEFFREY NADHERNY,

Plaintiff, Appellee/Cross-Appellant,

v.

ROSELAND PROPERTY COMPANY, INC.;
ROSELAND/PORTSIDE AT PIER ONE, LLC;
ROSELAND/OVERLOOK, LLC; CANTON PROPERTY
HOLDING, LLC; RANDOLPH PROPERTY HOLDING, LLC;
and ROSELAND HINGHAM, LLC.,

Defendants, Appellants/Cross-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before
Lynch, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Laura R. Studen, with whom Shepard Davidson and Burns & Levinson LLP were on brief, for plaintiff, appellee/cross-appellant.
Kenneth M. Bello, with whom Josiah M. Black and Bello Black LLP were on brief, for defendants, appellants/cross-appellees.

November 23, 2004

**LYNCH**, **Circuit Judge**. This is a contract dispute between a real estate development company, Roseland Property Company ("Roseland"), and the former head of its Boston Office, Jeffrey Nadherny. The district court, on cross-motions for summary judgment, entered judgment for Nadherny on his claims for declaratory judgment on the meaning of the contract. It also entered summary judgment for Roseland on Nadherny's claim of breach of the implied covenant of good faith and fair dealing. Finally, it found Nadherny's suit for damages under the contract to be premature and dismissed that claim. Both sides appeal.

While the district court's construction of the contract may or may not in the end be correct, the rules of summary judgment preclude resolution of the issue now. We reverse entry of summary judgment for Nadherny on his declaratory judgment claims, affirm entry of summary judgment for Roseland on Nadherny's implied covenant claims, and vacate the dismissal of the contract damages claim.

## I.

Roseland, a New Jersey based real estate development firm, opened a Boston office in 1999 in order to develop real estate projects in the Boston area. In doing so, they hired Nadherny to head the Boston office as their main developer. The employment contract at issue in this case was the result of months of negotiation between Nadherny and Marshall Tycher, one of the

principals of Roseland.   The relevant portions of Nadherny's employment contract with Roseland are set forth below.   Key provisions, inter alia, in dispute are found in the employment and vesting clause at Paragraph Eight and the termination clause at Paragraph Fifteen and are underlined.

1.  Your employment will start May 1, 1999 and will continue until terminated by you or Roseland as provided below.
. . . .
4. Your title will be that of "Partner", although your relationship to Roseland, and your interests in projects, will be established and governed by the provisions of this agreement.
. . . .
8. <u>You will be entitled to a participation interest in all new projects which originate out of Roseland's Boston office during the period of your employment.</u> Roseland usually participates in projects through an affiliated entity (the "Roseland Entity") established for each project. Your participation interest in each applicable project will be equal to 15% of the cash distributed to the Roseland Entity after the Roseland Entity has received cash distributions equal to the Roseland Entity's capital contributions plus an eight percent (8%) return on such contributions for such project. <u>Your interest in such new projects will vest at the same time that the Roseland Entity's interests vest.</u> Your participation percentage is subject to review each year.
. . . .
14. Your position will include the development of new business for Roseland.  Roseland will have and retain sole ownership and control of all new business developed by you while at Roseland, whether based on your own efforts or on leads supplied by Roseland ("Roseland Business").  You will have no proprietary or other rights in any Roseland Business other than as specifically provided in this agreement, and all Roseland Business will

> remain with Roseland following termination of our relationship for any reason.
>
> . . . .
>
> 15. . . . .
>
> <u>The relationship between you and Roseland is and at all times will be strictly an "at will" relationship, and either you or Roseland may terminate your employment and this relationship at any time with or without cause, for any reason or no reason, and with or without notice</u>.

Roseland terminated Nadherny's employment on February 8, 2002. At that time, both parties agree, there were four projects that began to be developed during the time of Nadherny's employment but that had not "vested" within the meaning of the contract terms, because the closing or construction start dates had not yet passed. Roseland informed Nadherny that he would not be entitled to a 15% participation interest in these projects, since none of them had vested prior to his termination. Nadherny disagrees.

## II.

Nadherny filed a diversity action on June 28, 2002 in federal court against Roseland and various project-specific entities. He sued for breach of contract and sought both damages and declaratory relief stating that he is entitled to a 15% participation interest in the four projects that began during the term of his employment but had not yet vested prior to the termination of his employment. He also sued Roseland for breach of the implied covenant of good faith and fair dealing, charging it with having terminated his employment solely for the purpose of

-4-

depriving him of his participation interests in the above deals. Both parties moved for summary judgment on all counts. They did not submit the case as a case stated.

The district court granted Nadherny's motion for summary judgment on his declaratory judgment claim, dismissed his breach of contract claim as unripe, and granted Roseland's motion for summary judgment on Nadherny's breach of the implied covenant of good faith and fair dealing claim. On the declaratory judgment claim, the court held that the evidence supported Nadherny's interpretation of the contract as to when Nadherny's interests in the development projects were required to vest in order for him to be entitled to a participation interest. Nadherny argued that the contract entitled him to a participation interest in all projects originating out of the Boston office while he was employed and that the "vesting" language referred only to the time of payment. The district court recounted Roseland's argument that:

> (1) plaintiff admitted in deposition testimony that "vesting" occurs at the moment of "project closing/start": when the financing is secure and construction is about to begin; (2) none of the four projects for which plaintiff seeks declaratory relief was even close to "project closing/start" when he was fired; and (3) the Contract expressly requires that vesting occur during the period of employment because, in addition to plaintiff's employment, it allows the parties to terminate at will "this relationship."

-5-

The first two of Roseland's argument points were undisputed, save as to one project.[1]

The court interpreted the contract by looking at the contract language as well as context and "other factors." As to contract language, the court concluded that the employment clause in Paragraph Eight gave Nadherny a participation interest in the projects, because they "originat[ed] out of Roseland's Boston office during the period of [his] employment," and that language was neither negated nor made ambiguous by the termination clause or any other clause.

The "other factors" utilized by the court included the fact that other reported decisions showed that other contracts denying employees' rights to unvested stocks and other property options had far more explicit language accomplishing those ends. The court held that the lack of such language here suggests "that the vesting of plaintiff's interests is not contingent upon continued employment." The court also considered the circumstances leading up to the execution of the contract, concluding that "it makes perfect sense that plaintiff would forgo his up-front money in exchange for a larger amount down the line." The court finally looked at the nature of the duties and risks each party bore and stated: "If plaintiff's interests had been contingent upon

---

[1] The Overlook Ridge project presented unique circumstances which, according to both parties, resulted in their reaching an alternative arrangement with respect to the vesting date.

continued employment, Roseland was bearing very little risk at all." In short, the court concluded:

> Taken as a whole, the language of the Contract and absence of a termination provision as to plaintiff's unvested real estate interests (construed against Roseland, which drafted the agreement), the circumstances leading up to the Contract, and the case law concerning analogous contracts all demonstrate that there is no genuine issue of material fact as to the interpretation of the Contract.

The court also granted summary judgment for Roseland on Nadherny's claim for breach of the covenant of good faith and fair dealing. The court held that there was no genuine issue of material fact with respect to the bad faith element of the claim, because Roseland had submitted ample evidence of "concern over plaintiff's performance and that the risk they had taken in hiring someone with limited development experience was not working in their favor."

Finally, the court dismissed Nadherny's breach of contract claim as unripe, since none of the projects in question had yet vested, and any attempt to "quantify those interests in present value [was] speculative at best."

Each side has appealed. Nadherny appeals the dismissal of his breach of contract claim, arguing that once Roseland repudiated the contract by stating its refusal to pay him any participation interests, he was entitled to recover damages immediately. Nadherny also appeals the grant of summary judgment

-7-

to Roseland on his breach of the covenant of good faith and fair dealing claim, arguing that there was ample evidence that he had performed well prior to his hiring which raised a genuine issue of material fact as to Roseland's bad faith in firing him.

Roseland appeals the grant of summary judgment to Nadherny on his contractual declaratory judgment claim, arguing that the district court erred in considering disputed extrinsic evidence in concluding that the contract was unambiguous, and that the contract is ambiguous and therefore summary judgment is inappropriate.

**III.**

Our review of the grant of summary judgment is de novo. Joyal v. Hasbro, Inc., 380 F.3d 14, 16 (1st Cir. 2004). We draw all reasonable inferences in favor of the non-moving party. Id.

Declaratory Judgment on Meaning of Contract (Counts 1 - 5)

Contract interpretation questions, under Massachusetts law, are ordinarily questions of law for a court; contract law, unlike tort law, thus favors judicial resolution of disputes. See Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). Whether a contract is ambiguous is a question to be determined by the court. Alison H. v. Byard, 163 F.3d 2, 6 (1st Cir. 1998). If a contract is unambiguous, the court should decide its proper interpretation. Id. There is usually, then, no need to

consult extrinsic evidence.  See Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 53 (1st Cir. 2001).

If a contract is ambiguous, the meaning of the ambiguous terms often, but not always, presents a question of fact for a jury.  There are exceptions to this generality, some stemming from the law of contracts and some stemming from the existence of summary judgment procedure.  For example, if, despite the ambiguity, no reasonable person could interpret the contract as one party does, the court may enter judgment against that party.  Cf. United States v. Data Translation, Inc., 984 F.2d 1256, 1259-63 (1st Cir. 1992) (affirming directed verdict on ground that no reasonable person could construe ambiguous contract language in the manner urged by appellant).[2]

In addition to the rules outlined above, other rules further favor judicial resolution of contract disputes.  There is the interpretive ground rule that ambiguous terms are usually to be construed against the drafter.  See Kerkhof v. MCI Worldcom, Inc., 282 F.3d 44, 51 (1st Cir. 2002).  There is also the interpretive rule that all of the contract's terms should be construed together

---

[2]     Similarly, there is some suggestion in Massachusetts law that if the extrinsic facts are not in dispute, a judge should decide the issue even if the outcome may be debatable. Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 303 (1st Cir. 2001); Atwood v. City of Boston, 37 N.E.2d 131, 134 (Mass. 1941); see also Baker v. America's Mortgage Servicing, Inc., 58 F.3d 321, 326 (7th Cir. 1995) (adhering to the same rule under Illinois law).  We need not decide this latter point.

to find a coherent whole.  See Gomez v. Rivera Rodriguez, 344 F.3d 103, 121 (1st Cir. 2003).  As such, a court may look to related provisions of a contract to cast light on the meaning of disputed language.  See Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort and Spa, No. 03-1924, 2004 WL 2494967, at *3 (1st Cir. Nov. 5, 2004).

Even when extrinsic evidence is considered, a judge may conclude that the evidence is "so one-sided that no reasonable person could decide the contrary." Boston Five Cents Sav. Bank v. Sec'y of Dept. of Hous. and Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985).  Further, on summary judgment, a judge may determine that the extrinsic evidence which is material is uncontested, and so appropriately enter judgment.  See Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 111 (1st Cir. 2001).  The usual rule, however, is that it is for the jury to construe the contract, under proper instructions, if evidentiary issues have to be resolved, so long as the proper interpretation is fairly debatable.  See Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994).

The district court correctly articulated all of these governing principles.  It also correctly asked whether the proffered readings made sense -- both in the sense of trying to accomplish something rational in light of how the parties are situated, Shea v. Bay State Gas Co., 418 N.E.2d 597, 601-02 (Mass. 1981), and in light of the usage of the trade.  Nat'l Tax Inst.,

2004 WL 2494967, at *3 ("Agreements, especially commercial arrangements, are designed to make sense.  If one reading produces a plausible result . . . that reading has a strong presumption in its favor as against another reading producing an unlikely result.").  "In short, words matter; but the words are to be read as elements in a practical working document and not as a crossword puzzle."  Fleet Nat'l Bank v. H&D Entm't, Inc., 96 F.3d 532, 538 (1st Cir. 1996).  Our question is whether, given those rules and the undisputed evidence, no reasonable person could construe the contract contrary to Nadherny's interpretation.  Our answer is that, on its language alone, it is quite plausible that a reasonable person could interpret the contract either way and the answer may turn on disputed extrinsic evidence.

The Words Alone

Nadherny argues that the language in Paragraph Eight should be construed to mean that he retains an interest in all projects originating out of the Boston office during the time of his employment, regardless of whether those projects vested during the time of his employment.  He argues that the vesting language in the contract refers only to the time at which he is entitled to receive the money, not the time at which his interest attaches to the project.

The contract language is ambiguous and subject to conflicting interpretations.  At the least, three of the clauses

-11-

appear to be at war with each other. The first sentence of Paragraph Eight reads: "You will be entitled to a participation interest in all new projects which originate out of Roseland's Boston office during the period of your employment." This sentence appears to give Nadherny rights in any project which originated during the period Nadherny worked for Roseland. Whether that reading is correct is cast into doubt by later sentences. That reading is at odds with the fourth sentence of Paragraph Eight, which reads: "Your interest in such new projects will vest at the same time that the Roseland Entity's interests vest." This can be read to give Nadherny rights only on vesting. But what "vesting" means is unclear.

As the district court recognized, the parties agree that such vesting occurs only at project closing/start. None of the projects at issue,[3] it is agreed, had reached the closing/start stage at the time of termination of Nadherny's employment. In conflict with the reading that Nadherny had no rights in the project before vesting, Nadherny offers a supposedly reconciling interpretation: that "vesting" refers not to his right to receive payment but only as to when such payments are to be received. This is far from self-evident. The first definition of the word "vest" in Black's Law Dictionary is "to confer ownership of [property]

_____

    [3]   The parties reached an alternative arrangement with respect to the Overlook Ridge Project. See supra note 1.

-12-

upon a person."  Black's Law Dictionary 1594 (8th ed. 2004).  The ambiguity about vesting creates an ambiguity about the first sentence of Paragraph Eight.

There is a further ambiguity about the meaning of the two clauses in Paragraph Eight when they are read against the at-will employment and termination clause in Paragraph Fifteen, which provides: "[E]ither you or Roseland may terminate your employment and this relationship at any time with or without cause . . . ."  This clause raises the question of what "this relationship" means and suggests it means something different from employment.  But then, in turn, "relationship" is used in varying ways in other clauses in the contract.  For example, in Paragraph Four, the contract refers to the agreement governing both "your relationship to Roseland and your interests in projects."  This suggests that "relationship" is different from "interests in projects," but perhaps not from "employment."  Yet it is also true that Paragraph Fourteen of the agreement permits Nadherny to enter into other development contracts after the "termination of our relationship."  That Paragraph also provides that "all Roseland Business will remain with Roseland following termination of our relationship for any reason."  The "relationship" language complicates rather than resolves the tension between the first sentence and the vesting sentence in Paragraph Eight.

The words alone do not decide the issue. The fact that the issue could have been cleanly resolved by other language is of little assistance. Either side to this dispute could have urged other language to avoid these ambiguities in what is a badly drafted agreement. The absence of such clarifying language helps neither side and does not resolve the ambiguities.

Resort to the rule of construction of a contract against the drafter is also of no utility. See Nat'l Tax Inst., 2004 WL 2494967, at *2 (Construction against the drafter is "a default rule that arguably has more force where the parties differ in sophistication or where standard forms are used . . . and should only be used, as a last resort, if other aids to construction leave the case in equipoise."); Boston Ins. Co. v. Fawcett, 258 N.E.2d 771, 776 (Mass. 1970) (refusing to construe the contract against the drafter when parties negotiated the contract as equals). It is unclear who drafted the contract -- it may well have been actively negotiated between the parties. In his deposition, Nadherny was asked if the contract "was a culmination of many months of discussions and draft proposals back and forth between [him] and Mr. Tycher," and Nadherny responded that it was. The record does show that Roseland was represented by counsel who did some drafting. But it does not show Roseland drafted the entire contract, much less that the contract was not negotiated or that Nadherny was not sophisticated.

Other Factors

The district court itself resorted to extrinsic evidence to resolve the contractual ambiguity, apparently viewing the words as insufficient to resolve the issue. The evidence was disputed about the parties' intent and about the industry practice. Nat'l Tax Inst., 2004 WL 2494967, at *2 (Extrinsic evidence "includes proof of negotiations between the parties . . . and general trade practice."). As to intent, it is unclear whether the district court relied on Nadherny's own affidavit which was attached to Nadherny's motion for summary judgment. The court made no explicit reference to it, but Nadherny urges it on us in support of the court's decision. Roseland did not move to strike the affidavit nor, at that point,[4] submit a counter affidavit.

Nadherny's affidavit recited at Paragraph 7:

I always understood [the contract] to mean that I, as Roseland's Boston Partner, obtained an entitlement to participate in any project that originated out of the Boston Office during my employment, but that I would not receive any actual proceeds from such projects unless/until the Roseland Entity for any particular project was paid back any capital contribution that it might have made, plus an additional 8% -- i.e., I would be paid when Roseland was paid.

---

[4] After it lost on the summary judgment motion, Roseland filed a motion for reconsideration and submitted the affidavit of Marshall Tycher. The district court denied the motion. We do not consider the Tycher affidavit.

-15-

Nadherny did not say he had ever expressed this understanding to Roseland during the contract negotiations. Bypassing the dubious admissibility of this testimony, the evidence cannot resolve the ambiguity issue even if admissible. The unexpressed intention of one party is not binding on the other party to a contract. The intention or understanding must be mutual to have a contract. <u>Lonnqvist</u> v. <u>Lammi</u>, 134 N.E. 255, 256-57 (Mass. 1922).

As to trade usage, the district court relied primarily on its understanding of how similar contracts are written in the industry to support its finding in favor of Nadherny. In doing so, it looked to other Massachusetts and First Circuit cases and then assumed the descriptions in those cases established industry practice. The parties did not agree to this procedure. Industry custom and practice was, instead, subject to dispute and, in the absence of evidence, could not be the subject of judicial notice. <u>Int'l Star Class Yacht Racing Ass'n</u> v. <u>Tommy Hilfiger U.S.A., Inc.</u>, 146 F.3d 66, 70-71 (2d Cir. 1998) (finding that facts adjudicated in a prior case are not subject to judicial notice). When evidence of custom and usage of the trade is used to interpret a contract and the issue is disputed, summary judgment is inappropriate. <u>Boston Five Cents Sav. Bank</u>, 768 F.2d at 9.

We reverse entry of summary judgment for Nadherny on Counts 1-5 and remand for further proceedings.

Covenant of Good Faith And Fair Dealing (Count 6)

In a cross-appeal, Nadherny asks that the entry of summary judgment against his breach of the covenant of good faith claim be reversed. Massachusetts law implies a covenant of good faith and fair dealing in every contract. Starr v. Fordham, 648 N.E.2d 1261, 1266 (Mass. 1995). Nadherny's basic theory is that, even if Roseland's interpretation of the contract were correct, Roseland still terminated his employment in order to deprive him of his participation interest in Roseland's projects, which is actionable under the implied covenant theory. See Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1255-59 (Mass. 1977).

The district court held that Roseland had amply proven for summary judgment purposes that it had reasons to terminate Nadherny's employment in light of his performance and the risk it had taken in hiring him. We agree. There is no evidence from Nadherny that he did not have these performance problems and that Roseland had not taken a risk in hiring him. The court also held that the participation interests were too remote to justify an inference that Roseland had fired Nadherny to avoid the vesting of those interests. See Sargent v. Tenaska, Inc., 108 F.3d 5, 8-10 (1st Cir. 1997) (affirming summary judgment denial of claim of breach of covenant of good faith and fair dealing based on possibility that unvested interests in development projects might vest at a later date after termination of employment).

-17-

Nadherny relies on the facts that (1) Nadherny was not told he would be terminated if his performance did not improve and that (2) in a disengagement memo Roseland reiterated that the strong points of his performance were his exceptional site preparation and his very good selection of personnel and consultants. From this, he argues, a jury could infer a wrongful purpose motivating the termination of his employment. Nothing in these two facts rationally leads to the inferences he wishes us to draw.

His evidence in support of the implied covenant claim is simply insufficient. See James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1250 (1st Cir. 1997) (summary judgment appropriate where plaintiff "fails to identify evidence in the record that would establish a genuine issue of material fact whether [defendant] acted in bad faith"). We affirm entry of summary judgment for Roseland on this count.

Contract Damages (Count 7)

The district court, having ruled in Nadherny's favor on the meaning of the contract, was forced to face the issue of whether the damages claims should then be addressed, or were premature, as Roseland argued. Even under Nadherny's interpretation of the contract, no payments were actually due him until the contracts vested, and vesting was some years off, if the conditions for vesting indeed ever happened. Although Nadherny provided an expert affidavit purporting to reduce Nadherny's expectancy interest to

-18-

present value, the court found that any interests Nadherny would get from the projects were "temporally remote" and found any attempts to quantify those interests into present value "speculative at best."

Since we have reversed the summary judgment in Nadherny's favor, we think it best to vacate the dismissal of the contract damages claim.  Nadherny may not prevail on liability; there is no need to address now the timing of the decision on any claims for damages.

Conclusion

We **reverse** entry of summary judgment for Nadherny on Counts 1-5; we **vacate** the dismissal of the damages claim; we **affirm** entry of summary judgment for Roseland on Count 6; and we **remand** for further proceedings.  So ordered.